**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR 07 121-01ML |
| | ) | |
| vs. | ) | |
| | ) | Cr. No. ____________ |
| (1) LEI JIN, | ) | In violation of 18 U.S.C. §§ 2, 371, |
| (2) GENESCIENCE PHARMACEUTICAL CO., Ltd., | ) | 545, 1956 (a)(2)(A); 21 U.S.C. |
| (3) JEFFREY J. ROCK, alias GAVIN KANE, | ) | §§ 331(d), 355, 333(e) |
| (4) ANDER JAA, alias ANDERSON JEFFERSON, and | ) | |
| (5) DAVID GARCIA, | ) | |
| Defendants. | ) | |

FILED
SEP 19 2007
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

**INDICTMENT**

The Grand Jury charges that:

The Defendants

At all times material to this Indictment:

1. Defendant LEI JIN (hereinafter JIN) was the Chief Executive Officer of Defendant GENESCIENCE PHARMACEUTICAL CO., Ltd., also known as GenSci (hereinafter GPC). JIN is a Chinese national who is believed to reside in Shanghai, China. JIN is also a lawful permanent resident of the United States, with a residence in Madison, Wisconsin.

2. GPC was engaged in the business of manufacturing, marketing, exporting, and distributing human Growth Hormone (hGH) under the brand name GenLei Jintropin (hereinafter Jintropin). GPC utilized the internet and various intermediaries to export Jintropin into the United States and other countries throughout the world. GPC is located in the Changchun High Technology Development Zone, Changchun, China.

3. Defendant JEFFREY J. ROCK, alias GAVIN KANE (hereinafter ROCK) of Camarillo, California, was the owner and proprietor of Gavin Kane Enterprises and RockHard

Physique. ROCK utilized the website www.propeptides.com, to engage in the business of importing, manufacturing, and distributing various brands of hGH including, but not limited to, Jintropin.

4. Defendant ANDER JAA, alias ANDERSON JEFFERSON (hereinafter JAA) was a foreign national believed to reside in Lahore, Pakistan and Shanghai, China. JAA acted as an independent distributor for GPC manufactured Jintropin. JAA utilized several e-mail addresses, including Mamta1001@Yahoo.com, to facilitate the distribution of Jintropin to customers in the United States and around the world.

5. Defendant DAVID GARCIA (hereinafter GARCIA) was a foreign national who is believed to reside in Slovenia. GARCIA acted as an independent distributor for GPC manufactured Jintropin. GARCIA used several e-mail addresses, including gensci3@gmail.com, to facilitate the distribution of Jintropin to customers in the United States and around the world.

## Statutory Framework

6. The United States Food and Drug Administration ("FDA") was the agency of the United States responsible for enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("the FDCA"). The FDA's responsibilities included regulating the manufacture, labeling, and distribution of drugs shipped or received in interstate commerce.

7. Under the FDCA, drugs are defined as, among other things, "(A) articles recognized in the official United States Pharmacopoeia . . .; (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any articles specified in clause (A), (B), or (C)."

21 U.S.C. § 321(g)(1).

8. Under the FDCA, a "prescription drug" is, among other things, a drug intended for use by people that, because of its toxicity or potential for harmful effect, the method of its use, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or a drug which was limited by a legally approved application (under 21 U.S.C. § 355) for use under the professional supervision of a practitioner licensed by law to administer such a drug.

9. The FDCA prohibits the introduction or delivery in interstate commerce of drugs for use in humans that have not been approved by the FDA through a New Drug Application, an Abbreviated New Drug Application, or a notice of claimed exemption for an Investigational New Drug, pursuant to 21 U.S.C. § 355. 21 U.S.C. §§ 331(d).

10. The FDCA prohibits the introduction or delivery for introduction into interstate commerce of any drug that is adulterated or misbranded. 21 U.S.C. § 331(a). A "misbranded drug" includes, among other things, a drug the labeling of which did not bear adequate directions for use or adequate warnings against its use. 21 U.S.C. § 352(f).

11. The FDCA prohibits knowingly distributing or possessing with intent to distribute hGH for any use in humans other than the treatment of a disease or other recognized medical condition that has been authorized by the Secretary of Health and Human Services (HHS) pursuant to 21 U.S.C. § 355. 21 U.S.C. § 333(e). The FDA has approved hGH only for the following uses: short stature in children with growth hormone deficiency, ideopathic short stature in children, short stature in children with Turner or Prader-Willi syndrome, short stature in children with chronic renal insufficiency, adults with biochemically documented growth

hormone deficiency (GHD) diagnosed either in adulthood or childhood, adults with wasting disease associated with AIDS, and adults with short bowel syndrome. Human Growth Hormone has not been approved for use in any anti-aging, body-building, or weight loss treatments.

12. Human Growth Hormone is defined as Somatrem, Somatropin, or an analogue of either Somatrem or Somatropin. It also includes hGH derived from a recombinant DNA process, "r-hGH." 21 U.S.C. § 333(e)(4). All human growth hormones are prescription drugs.

13. The FDA has never approved any hGH manufactured or imported from China for lawful use in the United States.

14. On January 7, 1992, the FDA issued Import Alert IA66-57 titled "Detention without physical examination of foreign unapproved prescription drugs." The alert provided that "unapproved prescription drugs present serious safety and effectiveness concerns. Moreover, approved U.S. versions of these drugs are available." The alert called for the seizure of all drugs entering the United States from companies identified on the alert. On September 4, 2003, this Import Alert was modified to include Jintropin produced by defendant GPC.

**<u>COUNT I</u>**
**<u>Conspiracy to Facilitate the Sale of Smuggled Goods,</u>**
**<u>in violation of 18 U.S.C. § 371, 545</u>**

15. The United States realleges and incorporates by this reference paragraphs 1-3 and 6-14 of this Indictment in their entirety as though fully set forth herein.

16. From in or about October 2006, to in or about July 2007, in the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (3) JEFFREY J. ROCK, alias GAVIN KANE, did conspire, confederate,

and agree with each other and others known and unknown to the Grand jury, to violate 18 U.S.C. §§ 2, 545, by knowingly facilitating the importation and distribution of hGH into the United States, knowing the same to have been imported into the United States contrary to 21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of misbranded drugs, in violation of Section 352(f)), 331(d) (prohibiting the introduction into interstate commerce of unapproved new drugs in violation of Section 355), and 333(e) (prohibiting the distribution of hGH for uses other than the treatment of a disease or recognized medical conditions that has been authorized by the Secretary of HHS pursuant to Section 355.).

**MANNER AND MEANS**

17. Defendants JIN and GPC operated a website, www.gensci-china.com, which claimed that GPC is one of the largest bio-pharmaceutical companies in China. The website was used to market and promote GPC's brand of hGH, named GenLei Jintropin. According to www.gensci-china.com, Jintropin captured 67% of China's hGH market. The website provided several e-mail addresses as contact information to interested customers. The website listed JIN as the CEO of GPC.

18. Utilizing various e-mail addresses, including but not limited to jintropin2005@yahoo.com, defendants JIN and GPC , communicated with various individuals, known and unknown to the grand jury, who purchased Jintropin for importation into the United States for purposes of distributing said Jintropin to customers throughout the United States, including Rhode Island.

19. Defendants JIN and GPC provided their customers with various bank accounts for GPC which were located in various banks throughout China. Four of these bank accounts were

opened under names other than GPC. In addition, defendants JIN and GPC provided their customers with various recipient names and locations in and around Shanghai and Changchun, China, in order to facilitate payments via Western Union money wires. Distributors for GPC, including but not limited to ROCK, directed their customers to send payments via bank transfers and Western Union wires to these various bank accounts and Western Union recipients as payment for delivered Jintropin.

20. Defendant ROCK doing business as Gavin Kane Enterprise and RockHard Physique, used the website address of www.propeptides.com, to engage in the business of importing, manufacturing, distributing, and promoting the sale of hGH, including Jintropin, to customers throughout the United States. The ProPeptides website lists ProPeptides as an official distributor for GPC manufactured Jintropin.

## OVERT ACTS

21. To effect the object of the conspiracy, the defendants, JIN, GPC, and ROCK, and other co-conspirators known and unknown to the Grand jury, performed overt acts, including but not limited to the following acts:

22. On or about October 30, 2006, defendant ROCK, utilizing the encrypted e-mail account propeptides@hushmail.com sent an e-mail to defendant GPC at jintropin2005@yahoo.com, in which he stated that he was interested in becoming an "official distributor" for Jintropin and requested "bulk ordering prices as well as requirements for official distribution."

23. On or about October 30, 2006, defendant JIN, utilizing e-mail account

jintropin2005@yahoo.com responded to defendant ROCK with the following e-mail: "Hi, where are you located? How you are planning to distribute our product? How much can you sell?"

24. On or about October 30, 2006, defendant ROCK sent defendants JIN and GPC an e-mail stating that he is in the United States but has a licensed company in Dominica with an offshore account in Cyprus. ROCK stated that he has a website, www.propeptides.com, and inquired whether he could add Jintropin to his product list on this website.

25. On or about October 30, 2006, defendant JIN, sent ROCK an e-mail in which he asked, "Where do you want our product to ship to?" and "what the purchase volume" would be.

26. On or about October 30, 2006, defendant ROCK sent defendants JIN and GPC an e-mail stating that the merchandise would be shipped to "multiple addresses in California." ROCK also stated that he would start by ordering fifty (50) kits but would increase his volume should the product sell well on his website.

27. On or about November 3, 2006, JIN sent ROCK an e-mail with instructions to send payment via Western Union money transfer to DePing Dong in Shanghai, China.

28. On or about November 3, 2006, ROCK caused four Western Union wires in the total amount of $9,750.00 to be transmitted from Camarillo, California to DePing Dong in Shanghai, China.

29. On or about November 3, 2006, ROCK sent JIN an e-mail in which he provided four Western Union money transfer control numbers (MTCN) for four transfers totalling $9,750.00. The MTCN number enables the recipient to trace the money transfer. ROCK also provided JIN with three delivery addresses in and around Camarillo, California.

30. On or about November 7, 2006, defendant ROCK e-mailed JIN and GPC a message

in which he inquired about the status of a shipment of Jintropin to three different addresses in California.

31. On or about November 7, 2006, an agent of GPC representing herself as SOPHIA, sent an e-mail message to ROCK in which she confirmed that three packages were sent to three different addresses in California and in which she provided tracking numbers for the packages.

32. On or about December 7, 2006, ROCK caused two Western Union wires in the total amount of $9,750.00 to be sent from Camarillo, California to DePing Dong in Shanghai, China.

33. On or about December 23, 2006, ROCK caused a Western Union wire in the amount of $6,150.00 to be sent from Camarillo, California to DePing Dong in Shanghai, China.

34. On or about June 19, 2007, defendant ROCK, utilizing the encrypted e-mail propeptides@hushmail.com, instructed an individual known to the grand jury, who resides in Rhode Island, to deliver money orders in the amount of $1,225.00 to a mail box at a United Parcel Service store in Newbury Park, California, as payment for three kits containing vials of Jintropin.

35. On or about July 2, 2007, defendant ROCK caused the shipment of a package containing three kits bearing the label GenLei Jintropin 10 IU to a post office box located in North Providence, Rhode Island.

All in violation of 18 U.S.C. § 371.

**COUNT II**
**Smuggling Goods into the United States,**
**in violation of 18 U.S.C. §§ 2, 545**

36. From on or about November 3, 2006 until on or about July 3, 2007, within the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE

PHARMACEUTICAL COMPANY, LTD., and (3) JEFFREY ROCK, alias GAVIN KANE, did knowingly and fraudulently import, bring, conceal, sell, and facilitate the transportation, concealment, and sale of merchandise, to wit a quantity of hGH under the brand name Jintropin, into the United States, contrary to 21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of misbranded drugs, in violation of Section 352(f)), 331(d) (prohibiting the introduction into interstate commerce of unapproved new drugs in violation of Section 355), and 333(e) (prohibiting the distribution of hGH for uses other than the treatment of a disease or recognized medical conditions that has been authorized by the Secretary of HHS pursuant to Section 355).

In violation of 18 U.S.C. §§ 2, 545.

**COUNT III**
**Distribution of Human Growth Hormone,**
**in violation of 21 U.S.C. § 333(e) and 18 U.S.C. § 2**

37. On or about July 3, 2007, within the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (3) JEFFREY ROCK, alias GAVIN KANE, did knowingly distribute and aid and abet the distribution of a quantity of hGH under the brand name Jintropin for use in humans other than for the treatment of a disease and other recognized medical condition, where such uses were authorized by the Secretary of HHS pursuant to 21 U.S.C. §355, but rather for unauthorized uses such as anti-aging, weight-loss, and muscle-building.

In violation of 21 U.S.C. § 333(e) and 18 U.S.C.§ 2 .

**COUNT IV**
**Distribution of an Unapproved New Drug, in violation of 21 U.S.C, §§ 331(d), 355(a), and 333(a)(2), and 18 U.S.C. § 2**

38. On or about July 3, 2007, within the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (3) JEFFREY ROCK, alias GAVIN KANE, did knowingly and with intent to defraud and mislead, introduce and deliver for introduction into interstate commerce, and cause to be introduced and delivered into interstate commerce, the new drug Jintropin, which new drug was not approved for use in humans, in that it was not the subject of an approved marketing or investigational application on file with the FDA, pursuant to 21 U.S.C. § 355, and did aid and abet the same.

In violation of 21 U.S.C. §§ 331(d), 333(a)(2) and 18 U.S.C.§ 2 .

**COUNT V**
**Distribution of Human Growth Hormone, in violation of 21 U.S.C. § 333(e)**

39. On or about August 16, 2007, within the District of Rhode Island and elsewhere, the defendant, (3) JEFFREY ROCK, alias GAVIN KANE, did knowingly distribute a quantity of hGH for use in humans other than for the treatment of a disease and other recognized medical condition, where such uses were authorized by the Secretary of HHS pursuant to 21 U.S.C. §355, but rather for unapproved uses such as anti-aging, weight-loss, and muscle-building.

In violation of 21 U.S.C. § 333(e).

**COUNT VI**
**Distribution of an Unapproved New Drug,**
**in violation of 21 U.S.C. §§ 331(d), 355(a), and 333(a)(2), and 18 U.S.C. § 2**

40. On or about August 16, 2007, within the District of Rhode Island and elsewhere, the defendant, (3) JEFFREY ROCK, alias GAVIN KANE, did knowingly and with intent to defraud and mislead, introduce and deliver for introduction into interstate commerce, and cause to be introduced and delivered into interstate commerce, the new drug GenLei Jintropin, which new drug was not approved for use in humans, in that it was not the subject of an approved marketing or investigational application on file with the FDA, pursuant to 21 U.S.C. § 355.

In violation of 21 U.S.C. §§ 331(d), 333(a)(2).

**COUNT VII**
**Smuggling Goods into the United States,**
**in violation of 18 U.S.C. §§ 2, 545**

41. On or about June 23, 2006, in the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (4) ANDER JAA, alias ANDERSON JEFFERSON, did knowingly and fraudulently import, bring, conceal, sell, and facilitate the transportation, concealment, and sale of merchandise, to wit a quantity of hGH under the brand name Jintropin, into the United States, contrary to 21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of misbranded drugs, in violation of Section 352(f)), 331(d) (prohibiting the introduction into interstate commerce of unapproved new drugs in violation of Section 355), and 333(e) (prohibiting the distribution of hGH for uses other than the treatment of a disease or recognized medical conditions that has been authorized by the

Secretary of HHS pursuant to Section 355).

In violation of 18 U.S.C. §§ 2, 545.

**COUNT VIII**
**Smuggling Goods into the United States,**
**in violation of 18 U.S.C. §§ 2, 545**

42. From on or about July 27, 2006, to on or about August 27 2006, in the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (4) ANDER JAA, alias ANDERSON JEFFERSON, did knowingly and fraudulently import, bring, conceal, sell, and facilitate the transportation, concealment, and sale of merchandise, to wit a quantity of hGH under the brand name Jintropin, into the United States, contrary to 21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of misbranded drugs, in violation of Section 352(f)), 331(d) (prohibiting the introduction into interstate commerce of unapproved new drugs in violation of Section 355), and 333(e) (prohibiting the distribution of hGH for uses other than the treatment of a disease or recognized medical conditions that has been authorized by the Secretary of HHS pursuant to Section 355).

In violation of 18 U.S.C. §§ 2, 545.

**COUNT IX**
**Smuggling Goods into the United States,**
**in violation of 18 U.S.C. §§ 2, 545**

43. On or about September 17, 2006, in the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (4)

ANDER JAA, alias ANDERSON JEFFERSON, did knowingly and fraudulently import, bring, conceal, sell, and facilitate the transportation, concealment, and sale of merchandise, to wit a quantity of hGH under the brand name Jintropin, into the United States, contrary to 21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of misbranded drugs, in violation of Section 352(f)), 331(d) (prohibiting the introduction into interstate commerce of unapproved new drugs in violation of Section 355), and 333(e) (prohibiting the distribution of hGH for uses other than the treatment of a disease or recognized medical conditions that has been authorized by the Secretary of HHS pursuant to Section 355).

In violation of 18 U.S.C. §§ 2, 545.

**<u>COUNT X</u>**
**Smuggling Goods into the United States,**
**in violation of 18 U.S.C. §§ 2, 545**

44. On or about September 26, 2006, in the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (5) DAVID GARCIA, did knowingly and fraudulently import, bring, conceal, sell, and facilitate the transportation, concealment, and sale of merchandise, to wit a quantity of hGH under the brand name Jintropin, into the United States, contrary to 21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of misbranded drugs, in violation of Section 352(f)), 331(d) (prohibiting the introduction into interstate commerce of unapproved new drugs in violation of Section 355), and 333(e) (prohibiting the distribution of hGH for uses other than the treatment of a disease or recognized medical conditions that has been authorized by the Secretary of HHS pursuant to Section 355).

In violation of 18 U.S.C. §§ 2, 545.

**COUNT ELEVEN**
**Smuggling Goods into the United States, in violation of 18 U.S.C. §§ 2, 545**

45. From on or about October 4, 2006, to on or about October 14, 2006, in the District of Rhode Island and elsewhere, the defendants, (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (5) DAVID GARCIA, did knowingly and fraudulently import, bring, conceal, sell, and facilitate the transportation, concealment, and sale of merchandise, to wit a quantity of hGH under the brand name Jintropin, into the United States, contrary to 21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of misbranded drugs, in violation of Section 352(f)), 331(d) (prohibiting the introduction into interstate commerce of unapproved new drugs in violation of Section 355), and 333(e) (prohibiting the distribution of hGH for uses other than the treatment of a disease or recognized medical conditions that has been authorized by the Secretary of HHS pursuant to Section 355).

In violation of 18 U.S.C. §§ 2, 545.

**COUNTS XII to XV**
**Laundering of Monetary Instruments, in violation of 18 U.S.C. § 2, 1956(a)(2)(A )**

46. On or about each of the dates listed below, in the District of Rhode Island and elsewhere, the defendants (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (3) ANDER JAA, transported, transmitted, and transferred a monetary instrument, to wit a Western Union money transfer, and aided and abetted the same, from a place in the United States to a place outside the United States, with the intent to promote the carrying on of a

specified unlawful activity, namely the smuggling of hGH under the brand name Jintropin into the United States, in violation 18 U.S.C. § 545:

| COUNT | DATE | AMOUNT | MTCN# | PAYEE |
|---|---|---|---|---|
| 12 | July 8, 2006 | $1,000.00 | 4288143109 | A. WU |
| 13 | July 8, 2006 | $1,150.00 | 6553673203 | A. WU |
| 14 | August 2, 2006 | $2,100.00 | 9383893396 | A. WU |
| 15 | September 7, 2006 | $2,000.00 | 1491093566 | A. WU |

All in violation of 18 U.S.C. § 2, 1956(a)(2)(A).

**COUNT XVI**
**Laundering of Monetary Instruments,**
**in violation of 18 U.S.C. § 2, 1956(a)(2)(A )**

47. On or about September 21, 2006, in the District of Rhode Island and elsewhere, the defendants (1) LEI JIN, (2) GENESCIENCE PHARMACEUTICAL COMPANY, LTD., and (3) DAVID GARCIA, transported, transmitted, and transferred a monetary instrument, to wit a Western Union money wire number 1316682089 in the amount of $1,650.00, and aided and abetted the same, from a place in the United States to a place outside the United States, to wit Changchun, China, with the intent to promote the carrying on of a specified unlawful activity, namely the smuggling of hGH under the brand name Jintropin into the United States, in violation 18 U.S.C. § 545.

In violation of 18 U.S.C. § 2, 1956(a)(2)(A).

A TRUE BILL:

REDACTED

ROBERT CLARK CORRENTE
United States Attorney

ADI GOLDSTEIN
Assistant U.S. Attorney

STEPHEN G. DAMBRUCH
Chief, Criminal Division